IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**DARRIN WALKER,**

    **Petitioner,**

  v.                                        Case No. 2:05-cv-449
                                                Crim. No. 2:02-cr-035
                                                JUDGE GRAHAM

**UNITED STATES OF AMERICA,**            Magistrate Judge ABEL

    **Respondent.**

**REPORT AND RECOMMENDATION**

Petitioner, a federal prisoner, brings the instant motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. §2255. This matter is before the Court on the instant petition, respondent's return of writ, and the exhibits of the parties.[1]

Petitioner's unopposed motion to amend his petition, Doc. No. 73, is **GRANTED**. For the reasons that follow, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED.**

**I. FACTS AND PROCEDURAL HISTORY**

This case involves the following facts, as summarized by the United States Court of Appeals for the Sixth Circuit:

> [A]n investigating agent (Janey Carroll) testified that [Perry] Jemison had informed police officials that he was transporting cocaine for Walker, and that she confirmed Walker's phone number and address. She also testified that Jemison called Walker, that the two men met, and then proceeded to Walker's residence with a knapsack containing "fake" cocaine. Another agent (Matthew Heufelder) testified that Jemison took the "fake" cocaine into Walker's garage, and that a

---

[1] On June 14, 2005, petitioner's claims C, D, and E, were dismissed. Doc. No. 73.

>group of agents then moved in to arrest Walker. Heufelder testified that Walker informed the agents that a firearm and money were located in the bedroom between the mattresses. After the agents received the search warrant, they searched the bedroom where the gun was found and the attached bathroom. In the bathroom, the agents discovered a box containing a digital scale, sandwich bags and razor blades, as well as a plastic bag with cocaine residue. The agents also recovered three bags of cocaine. In addition, the agents searched a Chevy Impala parked in the garage, and discovered cocaine, a money counter, a bullet-proof vest, small plastic baggies, and two firearms in the trunk. They also discovered a secret compartment where the passenger-side air bag had been and discovered white residue in the secret compartment.

*United States v. Walker*, No. 03-3233 (6th Cir. Feb. 5, 2004), Doc. #61.

On September 26, 2002, after a jury trial, petitioner was convicted on attempt to possess with the intent to distribute more than five hundred grams of cocaine, and possession with attempt to distribute more than fifty grams of crack cocaine after a jury trial, in violation of 21 U.S.C. §846, §841(a)(1), (b)(1)(B)(ii), (b)(1)(A)(ii). Doc. #38. On January 24, 2003, petitioner was sentenced to an aggregate term of 360 months incarceration plus five years supervised release. Doc. #46. On February 5, 2004, the United States Court of Appeals affirmed the judgment of this Court. *See United States v. Walker*, *supra*, Doc. #61.

On May 9, 2005, petitioner filed the instant *pro se* motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. §2255. On June 14, 2005, his claims C, D, and E, were dismissed. Doc. No. 73. The sole claims remaining for this Court's consideration are as follows:

>A. Whether petitioner's Sixth Amendment right to confrontation was violated when the United States willfully caused Perry Jemison to be unavailable for trial and Agent Carroll testified to statements made against petitioner?
>
>B. Was trial counsel ineffective when his cross-examination of Agent Carroll violated petitioner's Sixth Amendment right to confrontation by eliciting damaging evidence against petitioner?

On June 13, 2005, petitioner filed an unopposed motion to amend the petition, which motion has been granted, in which he additionally alleges that trial counsel was ineffective for failing to conduct discovery or hire an investigator to interview Jemison prior to trial.

It is the position of the respondent that petitioner's claims are without merit.

## II. CONFRONTATION CLAUSE

In claim A, petitioner asserts that he was denied his right to confront witnesses because the government "willfully caused Perry Jemison to be unavailable for trial and Agent Carroll testified to statements made against petitioner." This claim should have been raised on direct appeal, but was not. Petitioner therefore must establish cause for his failure to raise this claim earlier, as well as actual prejudice resulting from the error before this claim may be considered here. *Napier v. United States*, *supra*, 159 F.3d at 961, citing *United States v. Frady*, *supra,* 456 U.S. at 167-68. The Court presumes that petitioner asserts the ineffective assistance of appellate counsel as cause for his procedural default of this claim.

The ineffective assistance of counsel may constitute cause for a procedural default. *Edwards v. Carpenter,* 529 U.S. 446, 451 (2000), citing *Murray v. Carrier*, 477 U.S. 478, 488-89 (1986). "Not just any deficiency in counsel's performance will do, however; the assistance must have been so ineffective as to violate the Federal Constitution." *Id*.

The right to counsel guaranteed by the Sixth Amendment is the right to the effective assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970). The standard for reviewing a claim of ineffective assistance of counsel is twofold:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must

3

> show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also Blackburn v. Foltz*, 828 F.2d 1177 (6th Cir. 1987). "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, at 689.

To establish prejudice, it must be shown that there is a reasonable probability that, but for counsel's errors, the result of the proceedings would have been different. *Strickland*, at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. Because petitioner must satisfy both prongs of the *Strickland* test to demonstrate ineffective assistance, if the Court determines that petitioner has failed to satisfy one prong, it need not consider the other. *Id*. at 697.

The *Strickland* test also applies to appellate counsel. *Burger v. Kemp*, 483 U.S. 776 (1987). Counsel must provide reasonable professional judgment in presenting the appeal. *Evitts v. Lucey*, 469 U.S. 387, 396-97 (1985). "'[W]innowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986)(quoting *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983)).

Petitioner asserts that he was denied the effective assistance of counsel due to his attorney's failure to raise on appeal an issue that petitioner was denied his right to confront witnesses due to hearsay testimony by Agent Carroll regarding statements of Perry Jemison. Because petitioner did

4

not object to any of the foregoing issues at sentencing, such errors would be reviewed on appeal for plain error only. *United States v. Koeberlein*, 161 F.3d 946, 949 (6th Cir. 1998)(citations omitted); Fed.R.Crim.P. 52(b).

> "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Fed. R. Crim. P. 52(b). To establish plain error, a defendant must show (1) that an error occurred in the district court; (2) that the error was plain, i.e., obvious or clear; (3) that the error affected defendant's substantial rights; and (4) that this adverse impact seriously affected the fairness, integrity or public reputation of the judicial proceedings. Johnson, 117 S.Ct. at 1549; *United States v. Thomas*, 11 F.3d 620, 629-30 (6th Cir.1993) (discussing at length plain error doctrine set forth in *Olano*).

*Id.* Petitioner cannot meet this standard here.

DEA Agent Janey Carroll testified that Perry Jemison was arrested in Nevada when police stopped Jemison's car and discovered a hidden compartment containing 4 kilograms of cocaine. *Transcript,* at 265. Jemison gave police a cellular phone number, and the name, "Big Worm, Darrell or Darrin," as the name of the person to whom he was delivering the cocaine. *Id*. The phone number provided by Jemison was traced to petitioner at 5068 Kilbourne Run Place. *Id.*, at 268. Carroll said that Jemison viewed a photograph of the Kilbourne address and indicated that was the residence of this Big Worm, Darrin or Darrell.

*Id.*, at 269. Jemison was not available at trial.

> Q. [T]his individual that was cooperating, what was his name?
>
> A. His name was Perry Jemison.
>
> Q. Where is Mr. Jemison today?
>
> A. He is residing somewhere in Detroit, Michigan, to the best of my knowledge.

> Q. Do you know where in Detroit?
>
> A. Not at this moment, no.
>
> Q. What's his status at this time?
>
> A. I don't know.
>
> Q. Has there been a warrant issued for his arrest?
>
> A. Yes.
>
> Q. As it relates to this case?
>
> A. Yes.
>
> Q. Is he cooperating to this day?
>
> A. No, I spoke with him in mid August, I believe, and that was the last contact I had.

*Id.*, at 270.  A controlled delivery was set up.  *Id.*, at 270-271. Carroll monitored phone calls made by Jemison to the cellular number that had been traced to petitioner.  *Id.*, at 271.

> The first telephone call indicated to Mr. Walker that Mr. Jemison had arrived in Detroit, Michigan, and was on his way down to Columbus, Ohio.  Mr. Walker asked if Mr. Jemison had the Britney Spears with him, and Mr. Jemison indicated he did and he would contact Mr. Walker as he arrived in Columbus, Ohio.

*Id.*, at 272.  Police watched while petitioner met Jemison in a Wendy's parking lot.  *Id.*, at 273. Jemison wore a recording device and police listened.  *Id.*, at 273. Carroll did not observe the exchange take place at Wendy's.  *Id.*, at 274.  Carroll heard Walker tell Jemison to follow him back to Walker's residence.  *Id.*, at 275.  Jemison followed petitioner to Kilbourne Run Place.  *Id.*, at 275-77.  DEA Agent Matthew Heufelder drove to Kilbourne Run Place before petitioner and Jemison arrived.  *Id.*, at 335.  He watched as petitioner and Jemison returned from Wendy's and parked their vehicles side by side in the driveway.  *Id.*, at 3356.  They got out of their cars.  *Id.*  They walked

inside of the garage. *Id.*, at 337. Jemison retrieved the black knapsack containing the fake cocaine from his car, and they both entered the house. *Id.*, at 337. Petitioner and Jemison were then arrested. *Id.*, at 338. Other items, including a firearm, money, a digital scale, sandwich bags, and 592.7 grams of cocaine hydrochloride were found in the master bedroom of the house upon execution of a search warrant. *Id.*, at 456-68.

The Sixth Amendment to the United States Constitution guarantees criminal defendants the right to physically confront and cross-examine adverse witnesses at all stages of the trial. *Illinois v. Allen*, 397 U.S. 337, 388 (1970). On March 8, 2004, the United States Supreme Court overruled *Ohio v. Roberts*, 448 U.S. 56 (1980), and redefined the test for determining whether admission of hearsay statements violates the Confrontation Clause. The Supreme Court held in *Crawford v. Washington*, 124 S.Ct. 1354 (2004), that testimonial statements of a witness who does not appear at trial are inadmissible unless the witness was unavailable to testify and the defense had a prior opportunity for cross-examination. *Id.*, at 1366:

> Where testimonial evidence is at issue... the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination.

The Court declined to spell out a comprehensive definition of the term "testimonial," but stated that, at a minimum, the term includes

> prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations. These are the modern practices with closest kinship to the abuses at which the Confrontation Clause was directed.

*Id*.

A casual remark to an acquaintance, business records, and statements made in furtherance of a conspiracy do not constitute testimonial statements subject to the strictures of the Sixth

7

Amendment. *Id*., at 1364, 1367. A violation of the Confrontation Clause is subject to harmless error analysis. *Calvert v. Wilson*, 288 F.3d 823, 832-33 (6th Cir. 2002); *Stapleton v. Wolfe,* 288 F.3d 863, 867 (6th Cir. 2002);

The record does not reflect that petitioner was denied his right to confront witnesses by the testimony of Agent Carroll. Aside from Carroll's statement that Jemison had provided police with "a cellular telephone number and a name of Big Worm, Darrell or Darrin," Carroll did not testify as to any hearsay statements made by Jemison. Further, there simply is no support for petitioner's allegation that the government caused Jemison's absence from trial. To the contrary, the record reflects that the government was attempting to locate Jemison, since a warrant had been issued for his arrest.

Petitioner has failed to establish the ineffective assistance of counsel due to his attorney's failure to raise on appeal an issue regarding a violation of the Confrontation Clause. Petitioner has failed to establish cause or prejudice for his procedural default of claim A.

### III.  INEFFECTIVE ASSISTANCE

In claim B, petitioner asserts that he was denied the effective assistance of counsel because his attorney elicited damaging hearsay statements by Perry Jemison during cross-examination of Agent Carrol. Petitioner complains of the following testimony by Carroll:

> Q. Who was in the car with Perry Jemison in Las Vegas?
>
> A. Roger Gross.
>
> Q. Where is Roger now?
>
> A. At an unknown location.
>
> Q. Is he also no longer in custody?

8

> A. No.
>
> \*\*\*
>
> Q. And how did they get out of custody, if you know? Only if you know.
>
> A. I was not present.

*Transcript,* at 291.

> Q. And the story that's concocted is that he's driven down from Detroit to Columbus?
>
> A. Mr. Jemison indicated that he leaves, I believe – I have an address there in California – and arrives in Detroit; he drops off his passenger, Mr. Rhodes, and then he drives down from Detroit. This is a vehicle that Mr. Walker had arranged –
>
> Q. No, Mr. Jemison told you Mr. Walker had arranged. You have no other evidence of that, do you.
>
> A. Yes, sir, that was what Mr. Jemison had told me.
>
> Q. Right. So allegedly arranged by a courier for 4 kilos of cocaine he alleged Mr. Walker –
>
> A. Yes, Mr. Jemison indicated that Mr. Walker and him had purchased the vehicle with the trap in the driver's side passenger air bag and Mr. Jemison was making payments on the vehicle, and he would make trips to California for approximately $4,000 per trip.

*Id.,* at 299-300.

> Q. ... Who is to pay for this million dollars worth of cocaine? You found 31,000; we are now $970,000 short.
>
> \*\*\*
>
> A. Mr. Jemison indicated that the money had already arrived in California from Mr. Walker.
>
> Q. What did you do to confirm the truth or accuracy of that statement?

9

> A. I have knowledge of an agent who has forwarded that information to California. I do not have information on that investigation.
>
> Q. Did you ever locate any sort of transfer of funds in the amount of $970,000 from Columbus, Ohio, to California as part of your investigation?
>
> A. Mr. Walker indicated it was cash. No. Excuse me, Mr. Jemison indicated it was a cash payment.

*Id.*, at 313-314.

> Q. When is the last time you talked to Mr. Jemison?
>
> A. Mid August.

*Id.*, at 315.

> Q. Did you then with the other agents effect the arrest or the takedown of Mr. Walker and Mr. Jemison?
>
> A. We did.
>
> Q. Did that go without incident?
>
> \*\*\*
>
> A. Mr. Jemison had resisted slightly and said in his statement afterward he was trying to make it look good, that he wasn't the guy setting up the deal and being the informant.

*Id.*, at 339-340.

Petitioner has failed to establish the ineffective assistance of counsel under the test set forth in *Strickland* based upon counsel's cross-examination of Carroll. Counsel argued that Jemison set petitioner up so that Jemison to avoid criminal charges. *See Transcript*, at 635-644. Counsel blamed police for permitting Jemison to escape. *Id.*, at 644, 646. Counsel argued that there was no evidence, without Jemison, to establish that petitioner knew that a drug deal was to take place, and that Jemison's story was incredible in view of Jemison's motive to cooperative with police. *See id.*

Upon review of the record, and in light of the evidence that was presented, trial counsel's cross-examination of Carroll was not unreasonable.

Further, petitioner has failed to establish the ineffective assistance of counsel based upon counsel's failure to investigate or to interview Jemison.[2] Petitioner fails to indicate, and the record does not reflect, that counsel failed to present any evidence that would have assisted in petitioner's defense, or that counsel's performance was otherwise unreasonable or inadequate under *Strickland*. Although petitioner has attached to his motion to amend the petition documents concerning a disciplinary action that has apparently been filed against trial counsel in relation to this case, the complaint appears to involve issues regarding the alleged improper payment of fees, and nothing therein supports petitioner's claim of ineffective assistance of counsel.

## IV.

Based upon all of the foregoing, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED**.

If any party objects to this *Report and Recommendation*, that party may, within ten (10) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the

---

[2] It is not apparent from the record whether or not counsel could have interviewed Jemison prior to trial, since Jemison had apparently absconded.

magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation.  See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).


                                                  s/Mark R. Abel
                                                  United States Magistrate Judge